**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :
JWQ CABINETRY INC.,                 :
                                    :
            Plaintiff,              :
                                    :     Civ. Action No.:13-4110(FLW)
      v.                            :
                                    :          **OPINION**
GRANADA WOOD & CABINETS INC.,       :
GRANADA KITCHEN AND FLOOR,          :
LLC., HAIYANG KUNLUN WOOD CO.,      :
LTD., AND TAO ZHANG,                :
                                    :
            Defendants.             :
_____:

**WOLFSON, District Judge:**

      This case arises out of an alleged contract for purchases of kitchen cabinets between Plaintiff JWQ Cabinetry ("Plaintiff" or "JWQ") and Haiyang Kunlun Wood Co., LTD ("Kunlun"). Plaintiff accuses Kunlun of breaching their agreement by failing to issue a full refund for defective shipments of cabinets.  In that regard, Plaintiff claims that defendant Tao Zhang ("Defendant" or "Zhang"), the purported president and shareholder of Kunlun, is an alter ego of Kunlun, and that he should be personally liable for the actions of his company.  Presently before the Court is a motion to dismiss the Complaint filed by Zhang.  In response, Plaintiff opposes Defendant's motion to dismiss, as well as moves to amend its Complaint pursuant to Federal Rule of Civil Procedure 15(a).  For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED** in its entirety, and Plaintiff's Motion to Amend is **DENIED**.

## BACKGROUND and PROCEDURAL HISTORY

At the outset, I note that the factual background is derived from the Proposed Amended Complaint (the "Complaint"), and taken as true, for the purposes of this motion.[1] JWQ is a New Jersey Corporation that buys and sells kitchen cabinets intended for consumer use. Compl. ¶ 8. Beginning in 2010, Kunlun was JWQ's primary supplier of kitchen cabinets. *Id*. ¶ 10. Kunlun is a foreign investment enterprise, located in China, that sells, manufactures, and exports kitchen cabinets and bathroom vanities. *Id*. ¶ 9. This action involves several orders placed by JWQ with Kunlun from August 2012 to March 2013.

On August 4, 2012, JWQ placed an order with Kunlun for two containers of cherry maple cabinets ("August Orders"). *Id*. ¶ 21. Kunlun confirmed the two orders by sending JWQ a contract that included Kunlun's official stamp and Zhang's signature. *Id*. ¶ 22. Pursuant to Kunlun's and JWQ's general course of dealing, JWQ remitted payment to Kunlun in three separate payments, dated August 15, 2012, November 13, 2012, and November 20, 2012. *Id*. ¶¶ 23-26. The first order was received by JWQ on November 24, 2012, *see id*. ¶ 28, and the second order followed on November 28, 2012. *Id*. ¶ 32.

Upon inspection of both orders, JWQ noticed that the cabinet color and finish were both defective; subsequently, JWQ contacted Kunlun. *Id*. ¶ 35. JWQ, through its president, John Qi, communicated directly with Zhang, who Plaintiff alleges is the "registered owner and/or President" of Kunlun. *Id*. ¶¶ 13, 36. Zhang and Qi exchanged several emails regarding the defective cabinets, some of which included "internal emails sent between Zhang and Kunlun regarding Kunlun's knowledge of the defect." *Id*. ¶ 27. After rounds of correspondence, Zhang

---

[1]    As discussed below, because I find that Plaintiff's proposed amendments are futile, on this motion to dismiss, I assess the allegations contained in the Proposed Amended Complaint in making my determination that Plaintiff has not stated any claims against Zhang.

instructed JWQ to ship the defective merchandise to the warehouse of Granada Wood & Cabinets, a California corporation. *Id.* ¶¶ 40-47. As instructed, JWQ shipped the defective merchandise to Granada and requested a refund in the amount of $146,233.99. *Id.* ¶ 49. Zhang replied to this request and informed JWQ that Kunlun would not issue a refund, but instead, would issue JWQ a credit of $144,351.21 that could be used towards future purchases, *see id.* ¶ 52; JWQ agreed that this amount would compensate for the defective cabinets. According to Plaintiff, Zhang represented to JWQ that he had sold many of the returned cabinets to other customers. *Id.* ¶ 54.

In addition to the August Orders, JWQ had placed an order with Kunlun for one container of cabinets on October 23, 2012 ("October Order"), prior to the shipments of the defective cabinets. *Id.* ¶ 55. JWQ paid the initial balance to JWQ on October 25, 2012. *Id.* ¶ 56. Upon notification that the October Order would be shipped in January 2013, JWQ requested that its credit from the August Orders be used to pay the balance due. *Id.* ¶ 58. Indeed, Kunlun deducted $44,784.98 from JWQ's credit to pay for the remaining balance of the October Order, reducing the credit to $96,566.23. *See id.* ¶ 66.

Shortly thereafter, on January 28, 2013, JWQ placed another order with Kunlun that was "confirmed by contract" on January 31, 2013 ("January Order"). *Id.* ¶¶ 43-44. By March 2013, JWQ had not received any communication from Kunlun regarding the status of the January Order; as a result, JWQ made several inquiries to Kunlun by email on March 14, 17, 19, and 24, 2013. *Id.* ¶¶ 45-46. Despite the pending order, JWQ placed an additional order with Kunlun on March 18, 2013 ("March Order"). JWQ did not receive any response from Kunlun regarding either the March or January Orders. *Id.* ¶ 47. Consequently, on March 27, 2013, JWQ notified Kunlun, Zhang, and Granada that it was cancelling both the January and March Orders and demanded a full refund of the remaining balance of the credit, i.e., $96,566.23. *Id.* ¶ 50.

3

On July 7, 2013, JWQ filed suit against Kunlun, Zhang, Granada Wood & Cabinets, Inc. and Granada Kitchen and Floor, LLC  (collectively, "Granada"), asserting (1) breach of implied covenant of good faith and fair dealing; (2) unconscionable business practices; (3) fraud; (4) breach of contract; and (5) unjust enrichment. On October 22, 2013, Zhang and Granada filed a motion to dismiss for lack of personal jurisdiction. This Court issued an opinion and order on May 19, 2014, holding that this Court lacks personal jurisdiction over Granada ("May Opinion"). *See JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. 12-4110, 2014 WL 2050267 (D.N.J. May 19, 2014).  While this Court found that it had personal jurisdiction over Zhang, he was dismissed as a defendant for improper service of process. *Id.*

As to Kunlun, although JWQ named Kunlun as a party to this suit, it has not served Kunlun with the summons and complaint. Indeed, a summons was issued as to Kunlun on June 19, 2014; it has not be returned.  After the Court's May Opinion, JWQ properly served Zhang on June 12, 2014. Zhang subsequently filed the instant motion to dismiss on August 18, 2014.  In response, Plaintiff opposes the motion and cross-moves to amend the Complaint, and he submits a Proposed Amended Complaint for the Court's consideration.  Because I find that the proposed allegations do not meet the futility standard, i.e., Rule 12(b)(6) standard, I will assess those allegations on this motion to dismiss.

## DISCUSSION

### I.  Standard of Review

#### A.  Motion to dismiss

On a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

4

may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotes and citation omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007), the Supreme Court clarified the 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 556); see also *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim . . . The pleading standard is not akin to a probability requirement, . . . to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly* 's standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 678. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings ... [although a] limited exception exists for

documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied*, 132 S.Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id.* at 98. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal*, 556 U.S. at 684)

### B.  Motion to Amend

Rule 15(a) states that a party may amend her pleading "once as a matter of course ... before being served with a responsive pleading." Fed. R. Civ. P. 15(a). At all other times, "[t]he court should freely give leave when justice so requires." *Id.* The decision to grant leave to amend is left within the discretion of the district court. *United States v. Diversified Environmental Groups, Inc.,* 1990 U.S. Dist. LEXIS 17044, *1, (E.D. Pa. 1990) (citing *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518–521 (3d Cir. 1988)). Courts employ a liberal tendency in granting leave to amend, because the pleading is not "a game of skill in which one misstep by counsel may be decisive to the outcome." *Unites States v. Hougham,* 364 U.S. 310, 317 (1960). Further, the Supreme Court has stated that "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of the discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* 371 U.S. 178, 182  (1962). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,—the leave sought should, as the rules required, be freely given." *Id.* In *Winer Family Trust v. Queen,*

503 F.3d 319, 330–331 (3d Cir. 2007), the Third Circuit held that even though "leave should be 'freely given when justice so requires,' ... 'a District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile.'" (internal citations omitted).

## II.  Breach of Contract

In Count IV of the Complaint, Plaintiff alleges that Zhang and Kunlun breached the purchase agreements by sending Plaintiff defective products and failing to remit a full refund.  It is Plaintiff's position that because Zhang signed the purchase orders, he is personally liable for the breach.  To counter, Zhang argues that Plaintiff entered into various agreements with Kunlun for the purchases of cabinets, and that he is not personally a party to those agreements.

In order to state a claim for breach of contract under New Jersey law, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot, Inc.*, 507 F.3d 188, 204 (3d Cir. 2007).  Here, Plaintiff's claim fails because Plaintiff has alleged no facts to demonstrate that Plaintiff and Zhang, in his personal capacity, had entered into any contract.  Throughout the Complaint, Plaintiff alleges that he purchased cabinets from Kunlun, not Zhang.  *See* Compl. ¶¶ 21, 55, 63.  Indeed, as alleged, Plaintiff remitted payments for those purchases to Kunlun.  *Id.* ¶¶ 23, 26.  When issues arose regarding the defective cabinets, Plaintiff looked to Kunlun for compensation.  *Id.* ¶ 38.  While Plaintiff alleges that he dealt solely with Zhang and that Zhang signed the purchase orders, Plaintiff's dealings with Zhang were based on Zhang's role as a corporate representative of Kunlun.  In fact, it is a basic tenant of corporate law that "a corporation is an entity separate and distinct from its shareholders." *Kennedy Funding, Inc. v. Lion's Gate Dev.*, LLC, No. 05-4741,

2006 U.S. Dist. LEXIS 21227, at *7 (D.N.J. Apr. 17, 2006) (granting defendant's motion to dismiss breach of contract and good faith counterclaims against individual defendants); *Touch of Class Leasing v. Mercedes-Benz Credit of Can., Inc.*, 248 N.J. Super. 426, 441 (App. Div.), *cert. denied*, 126 N.J. 390 (1991).  In that respect, a representative, i.e., officer, of a corporation cannot be "liable for breach of contract . . . where he simply signed on behalf of the corporate entity." *Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. 07-1342, 2008 U.S. Dist. LEXIS 11902, at *8-9 (D.N.J. Feb. 19, 2008); *Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, No. 11-1279, 2011 U.S. Dist. LEXIS 80083, at *7 (D.N.J. Jul. 2, 2011); *Home Buyers Warranty v. Roblyn Dev. Corp.*, No. A-0500-05T5, 2006 WL 2190742, at *4 (N.J. App. Div. Aug. 4, 2006) (holding officer not personally liable even where he signed contract without noting his corporate title); *Lexins, LLC v. PowerPlace Software, Inc.*, No. 2012 N.J. Super. Unpub. LEXIS 981, at *5 (App. Div. May 3, 2012)("an individual who signs a contract will not be personally liable if their execution is as an officer of a corporation.")(citing *Baran v. Clouse Trucking*, 225 N.J. Super. 230, 235 (App. Div. 1988)).  Accordingly, absent any allegations that Zhang personally sold the cabinets to Plaintiff, or that Zhang agreed to be personally held liable for the acts of the corporation, Zhang was not personally a party to the various purchase agreements entered into between Plaintiff and Kunlun.

Alternatively, Plaintiff claims that Zhang is an alter ego of Kunlun, and thus, Zhang is personally liable for the acts of the corporation.  However, Plaintiff's attempt at piercing the corporate veil also fails.  Under New Jersey law, courts should only pierce the corporate veil and permit the imposition of liability on individual shareholders where "the officer or director disregarded the corporate form and 'utilized the corporation as a vehicle for committing equitable or legal fraud.'" *Rowan Petroleum Properties, LLC v. Hollywood Tanning Systems, Inc.*, 899 F. Supp. 2d 303, 308 (D.N.J. 2012). In that connection, "[a]n individual may be liable for corporate

8

obligations if he was using the corporation as his alter ego and abusing the corporate form in order to advance his personal interests." *Rowan Petroleum,* 899 F. Supp. 2d at 308. Factors a court should consider in determining whether these elements have been alleged sufficiently are: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Trustees of the Nat'l Elevator Indus. Pension, Heath Benefit, and Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003).

Here, the Complaint alleges the following as support for piercing the corporate veil: (1) Zhang instructed Plaintiff to return the defective goods to Grenada's warehouse in California; (2) Zhang failed to issue Plaintiff a refund or credit for the defective goods; (3) Zhang used Kunlun as his alter ego by signing the purchase orders and acting as the point of contact for the sale of the cabinets; and (4) Zhang and Kunlun acted as one entity. Compl. ¶¶ 94-102.  These allegations fall woefully short of meeting the required elements for piercing the corporation veil.  While the Complaint alleges that Zhang utilized Kunlun as his alter ego and that "Zhang and Kunlun acted as one entity," it fails to allege any factual support to meet any of the above-listed factors.  The only allegation is Plaintiff's conclusory assertion that Zhang and Kunlun were one in the same since Zhang acted to further his personal interests.  *See Chnj Investors, LLC v. Koger*, No. 12-1467, 2013 U.S. Dist. LEXIS 39794, at *28 (D.N.J. Mar. 21, 2013) (rejecting claim to pierce the corporate veil where plaintiff failed to allege any relevant factors to support piercing the corporate veil and made only conclusory allegations).  This is clearly deficient; thus, Plaintiff's claim for breach of contract and the assertion of alter ego are dismissed.

### III.  Breach of the Implied Covenant of Good Faith

Having determined that Zhang did not have a contractual relationship with Plaintiff, Plaintiff's breach of implied covenant of good faith and fair dealing claim is dismissed. Plaintiff's argument on this claim is mainly based on the proposition that Zhang acted in bad faith. However, bad faith is insufficient to sustain this claim without the presence of a contract between the parties. *See McQuitty v. Gen. Dynamics Corp*., 204 N.J. Super. 514, 520-21 (App. Div. 1985)(finding that the absence of an alleged contract defeats not only the breach of contract claim, but it also defeats the claim for breach of the implied covenant of good faith and fair dealing, as "[o]ne cannot read additional terms into a non-existent contract."); *Lindenberg v. Arrayit Corp*., No. 14-833, 2014 U.S. Dist. LEXIS 108062, at *12 (D.N.J. Aug. 6, 2014); *ABD Monroe Inc. v. Monroe Twp.*, No. 04-4142, 2008 WL 58876, at *13 (D.N.J. Jan. 3, 2008).  Here, as discussed above, Plaintiff has not alleged a contractual relationship between Plaintiff and Zhang.  Accordingly, Plaintiff cannot state a claim against Zhang under this theory as well; this claim is dismissed.

### IV.  Unjust Enrichment

Count V of the Complaint alleges that Zhang and Kunlun failed to issue Plaintiff a refund/credit for the defective cabinets and the failure to do so unjustly enriched them.  To state a claim of unjust enrichment under New Jersey law, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011). Further, "[s]ince a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that 'the plaintiff allege a sufficiently direct relationship with the defendant to support the claim.'" *Id.* at 724.

10

Plaintiff's unjust enrichment claim is solely based on Zhang's alleged failure to issue a refund to Plaintiff for returning the defective cabinets. *See* Compl. ¶¶ 91-93.  However, there are no allegations that Zhang was personally enriched; as alleged, Zhang was merely acting on behalf of the corporation when he instructed Plaintiff to send the cabinets to Granada in California, and that Zhang, in his corporate capacity, represented to Plaintiff that Kunlun would issue a credit.  *Id.* ¶ 49.  Indeed, as set forth in the Complaint, Zhang acted as a representative of Kunlun.  Simply put, the Complaint fails to allege a direct relationship between Plaintiff and Zhang.  Therefore, Zhang is not alleged to have been personally enriched when Kunlun failed to remit a full refund to Plaintiff.  *See, e.g.*, *Swift v. Panday*, No. 13-650, 2013 U.S. Dist. LEXIS 187423, at *37 (D.N.J. Apr. 30, 2013) (dismissing unjust enrichment claim against owner of a corporation because plaintiff did not plead facts sufficient to pierce the corporate veil).  Accordingly, Plaintiff's unjust enrichment claim against Zhang is dismissed.

## V.  Fraud Claims

Counts II and III of the Complaint, respectively, allege claims of unconscionable business practices in violation of the New Jersey Consumer Fraud Act ("NJCFA") and common law fraud. Both of these Counts must be pled with sufficient particularity, pursuant to Rule 9(b). *See* Fed. R. Civ. 9(b); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008) (applying Rule(b) pleading requirements to NJCFA claims). Specifically, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. 9(b). This heightened requirement can be summed up as "[requiring], at a minimum, that plaintiffs support their allegations of . . . fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Securities Litigation*, 438

F.3d 256, 276 (3d Cir. 2006) (internal quotations and citations omitted). However, courts should additionally "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 307 (D.N.J. 2013) (internal quotation omitted).

### A.  Fraud

Count III alleges that Zhang engaged in fraud by representing to Plaintiff that Kunlun would issue a refund or credit for the rejected cabinets with no intention of doing so.  Moreover, Plaintiff alleges that Kunlun and Zhang knew the cabinets were defective before they were shipped to Plaintiff.  Essentially, Plaintiff accuses Zhang and Kunlun of knowingly sending defective cabinets to Plaintiff with no intention of ever returning Plaintiff's payments of those cabinets. Based on those averments, Plaintiff maintains that it has sufficiently stated a fraud claim. Defendant, however, counters that Plaintiff's fraud allegations are conclusory, and they fall short of meeting the Rule 9(b) requirements.  The Court agrees.

Under New Jersey law, a plaintiff alleging a fraud claim must plead, with sufficient particularity, that defendant made "(1) a material misrepresentation of a present or past fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) which resulted in reasonable reliance by the other party." Fed. R. Civ. P. 9(b); *Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 622 (D.N.J. 1999).

Here, Plaintiff's Complaint is deficiently pled as to the first two prongs. In order to sufficiently allege a material misrepresentation, a plaintiff must "show more than mere nonperformance," but that a promise was made "and the promisor [knew] at the time of promising that he [had] no intention of fulfilling it." *Id.* (internal quotation omitted).  As a material misrepresentation, Plaintiff alleges, albeit in a conclusory manner, that Zhang did not follow

12

through on his promise to issue a refund, and that Zhang knew, at the outset, that he would not issue a refund to Plaintiff.  Plaintiff's own allegations belie its theory of liability; that is, Plaintiff ignores the fact that Zhang, as alleged, represented to Plaintiff that Kunlun would only issue a *credit* to Plaintiff, not a refund.  More importantly, according to the Complaint, Plaintiff was in fact issued a partial credit on the October Order.  With those allegations, Plaintiff is hard pressed to argue that Zhang knew at the time he made the alleged promise that Kunlun would allegedly fail to fully compensate Plaintiff.  This is not sufficient to plead a fraud claim; the Complaint simply does not provide any factual support that Zhang knew or believed that the alleged misrepresentation was false.  Additionally, nowhere in the Complaint does Plaintiff point to any specific statements made by Zhang to induce Plaintiff to enter into contract with Zhang or Kunlun, or that Plaintiff relied on such a statement.  Absent any of the fraud elements, Plaintiff simply alleges a non-performance of a contract on the part of Kunlun.  *See Mankodi v. Trump Marina Assocs., LLC*, 525 Fed. Appx. 161, 167 (3d Cir. 2013) (finding that under New Jersey law, "courts may not infer fraudulent intent from mere nonperformance of a contract, as doing so would — eviscerate the distinction between a breach of contract and fraud.").  Accordingly, Plaintiff's fraud claim against Zhang is dismissed without prejudice.

### B.  Unconscionable Business Practice - NJFCA

Plaintiff argues that it has properly stated a claim of unconscionable business practice pursuant to NJCFA, because Defendant purposefully misled Plaintiff into believing it would receive a credit or refund for returning the defective cabinets. Defendant, however, argues that Plaintiff has failed to plead any aggravating circumstances that would allow a breach of contract claim to amount to a violation of the NJCFA.

From the outset, the Court notes that the corporate veil need not be pierced in order to hold Zhang liable for violations of the NJCFA. *See Allen v. V and A Bros., Inc.*, 208 N.J. 114, 130-32 (2011). Indeed, in order to hold a defendant individually liable for violating the NJCFA, a plaintiff need only allege that a defendant committed "an affirmative act or a knowing omission." *Id.* In that regard, "the [NJ]CFA can [only] impose liability upon an individual . . .for his or her own affirmative acts or knowing omissions." *Cayuga Properties, L.L.C. v. Pollard*, No. L-2513, 2014 WL 259018, at *4 (N.J. App. Div. Jan. 24, 2014). This determination, thus, is a context-dependent one that must examine "both the specific source of the claimed violation that forms the basis for the plaintiff's complaint as well as the particular acts that the individual has undertaken." *Allen*, 208 N.J. at 136.

In order to state a claim under the NJCFA, a plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnick Dodge*, 197 N.J. 543, 557 (2009). However, a breach of contract, in and of itself, is not a *per se* unconscionable business practice and may not alone violate the NJCFA. *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997); *Cox v. Sears*, 138 N.J. 2 (1994).  In order to sustain a claim for violation of the NJCFA under a breach of contract theory, a plaintiff must additionally allege "substantial aggravating circumstances." *Id.*  Substantial aggravating circumstances may include, "existence of bad faith or lack of fair dealing." *Petri Paint Co., Inc. v. OMG Americas, Inc.*, 595 F. Supp. 2d 416, 420 (D.N.J. 2008)(citing *Cox*, 138 N.J. at 18).

While Plaintiff has generally alleged that Defendant engaged in unlawful conduct under the NJCFA, *see* Compl. ¶ 59, Plaintiff has failed to allege with sufficient particularity the conduct giving rise to its unconscionable business practice claim. Based on both the Complaint and

14

Plaintiff's briefing, Plaintiff's claim of unconscionable business practice is predicated on the same facts as his fraud claim.  However, as stated above, Plaintiff has failed to sufficiently allege that Zhang engaged in any fraudulent conduct.  Plaintiff simply does not present any additional aggravating circumstances to substantiate his breach of contract claim as a violation of the NJCFA. *See D'ercole Sales Inc. v. Fruehof, Corp.*, 206 N.J. Super. 11, 31 (App. Div.  1985) (finding that a refusal to repair tow truck did not transform breach of warranty claim into a violation of the NJCFA, however offensive the conduct may seem). Thus, this claim warrants dismissal without prejudice.

Finally, I will comment on Plaintiff's failure to serve Kunlun.  This Court issued a summons as to Kunlun on June 19, 2014.  However, to date, Plaintiff has failed to serve Kunlun the summons and complaint.  Thus, Plaintiff is in violation of Fed. R. Civ. P. 4(m).  In that regard, Plaintiff is directed to show cause why he has failed to effectuate proper service on Kunlun. Plaintiff must do so in writing by March 30, 2015.

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is **GRANTED** in its entirety. Plaintiff's motion to amend its Complaint is **DENIED**, as the proposed amendments would be futile; as a consequence, claims against Zhang are dismissed. Furthermore, because Plaintiff has failed to serve Kunlun within 120 days of filing the Complaint in violation of Fed. R. Civ. P. 4(m), Plaintiff is directed to show cause by March 30, 2015, why the claims against Kunlun should not be dismissed for failure to serve.

DATED:  March 16, 2015                                /s/       Freda L. Wolfson
                                                      Freda L. Wolfson, U.S.D.J.

15